JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

---

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Adalia Lee Redd and  Jazlyn Redd, | ) | Civil Action No. |
| Co-Administrators for the Estate of Steven | ) | |
| Burton Redd; Adalia Lee Redd, Individually; | ) | |
| Jazlyn Redd, Individually; Dezaray Redd, | ) | |
| Individually; Tristyn Redd, p/p/a Richard | ) | COMPLAINT |
| Bortolot individually; | ) | |
| | ) | *TRIAL BY JURY* |
| | ) | |
| PLAINTIFFS | ) | |
| | ) | |
| | ) | |
| Goodrich Corporation; Goodrich Pump and | ) | |
| Engine Control Systems, Inc.; Rolls-Royce | ) | |
| North America, Inc.; Allison Engine Company, | ) | |
| Inc.; Boeing Company; and MD Helicopters, | ) | |
| Inc. | ) | JULY 29, 2013 |
| | ) | |
| DEFENDANTS | ) | |
| | ) | |

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction of this matter pursuant to

Article I, § 8, cl. 17 of the U.S. Constitution, as this incident occurred in a federal enclave,

namely the United States Army Base at Ft. Benning, Georgia. (See <u>Willis v. Craig</u> (9th Cir. 1977)

555 F2d 724, 726; <u>Celli v. Shoell</u> (10th Cir. 1994) 40 F.3d 324, 328.)

2.      This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §

1332(a) in that there is complete diversity of citizenship and the amount in controversy exceeds

$75,000.00, exclusive of interesting and costs.

3.      This Court has personal jurisdiction over each of these Defendants in that they

were authorized to do business and were doing business in the State of Connecticut.

4.     Venue is based on 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district, and each Defendant is subject to personal jurisdiction in this Court.

## THE PARTIES

### Plaintiffs

5.     Plaintiff Adalia Lee Redd is an individual, a citizen and resident of the State of Tennessee, the surviving spouse of CWO2 Steven Redd, U.S. Army, deceased, and the co-administrator of his estate (Connecticut Court of Probate, Case No. PD4813-00637).

6.     Plaintiff Jazlyn Redd is an individual, a citizen and resident of the State of Iowa, the daughter of CWO2 Steven Redd, U.S. Army, deceased, and the co-administrator of his estate. (Connecticut Court of Probate, Case No. PD4813-00637).

7.     Plaintiff Dezaray Redd is an individual, a citizen and resident of the State of Arizona, the daughter of CWO2 Steven Redd, U.S. Army, deceased.

8.     Plaintiff Tristyn Redd, by and through his personal representative and best of friend, Richard Bortolot, is an individual, a minor, and a citizen and resident of the State of Louisiana, and the son of CWO2 Steven Redd, U.S. Army, deceased.

### Defendants

9.     Defendant Goodrich Corporation is a corporation, organized and existing under the laws of the State of New York, with its principal place of business in Charlotte, North Carolina and at all times material hereto was, among other things, the designer, manufacturer, tester, seller, supplier and systems integrator of the commercially available Fully Automated Digital Electronic Control ("FADEC") model EMC-35 that is installed in and on the Model 250 turbine engine.  The defendant is a product "seller" as that term is defined under the Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m(a).

2

10.     Defendant Goodrich Pump and Engine Control Systems, Inc. is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business in West Hartford, Connecticut and at all times material hereto was, among other things, the designer, manufacturer, tester, seller, supplier and systems integrator of the commercially available EMC-35 FADEC that is installed in and on the Model 250 turbine engine.  The defendant is a product "seller" as that term is defined under the Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m(a)

11.     Upon information and belief, Defendant Goodrich Pump and Engine Control Systems, Inc. operates as a subsidiary of Defendant Goodrich Corporation under the direct operational control of its parent company.

12.     Together and collectively, Defendant Goodrich Corporation and Defendant Goodrich Pump and Engine Control Systems, Inc., are referred to herein as the "FADEC Defendants."

13.     Defendant Rolls-Royce North America, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Reston, Virginia and at all times material hereto was, among other things, the designer, manufacturer, tester, seller, supplier and systems integrator for the Model 250 turbine engine and/or was the purchaser of or otherwise successor-in-interest to the designer, manufacturer, seller, tester, supplier and systems integrator for the Model 250 turbine engine installed in and on the AH-6M "Little Bird" helicopter and multiple other civilian and military helicopters.  The defendant is a product "seller" as that term is defined under the Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m(a).

14.     Defendant Allison Engine Company, Inc. a/k/a Allison Engine Company (collectively "Allison") a/k/a Rolls-Royce Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana and at all times material hereto was, among other things, the designer, manufacturer, tester, seller, supplier and systems integrator for the Allison Model 250 turbine engine a/k/a the Rolls-Royce Model 250 turbine engine and/or the purchaser of or otherwise successor-in-interest to the designer, manufacturer, seller, tester, supplier and systems integrator for the Model 250 turbine engine, installed in and on the AH-6M "Little Bird" helicopter and multiple other civilian and military helicopters.   Upon information and belief, Defendant Rolls-Royce Corporation and/or Defendant Rolls-Royce North America, Inc. acquired Defendant Allison in or about the year 1995. The defendant is a product "seller" as that term is defined under the Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m(a).

15.     Together and collectively, Defendant Rolls-Royce North America, Inc. and Defendant Rolls-Royce Corporation are referred to herein as the "Engine Defendants."

16.     Defendant Boeing Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois and at all times material hereto was, among other things, the designer, manufacturer, tester, seller, supplier and systems integrator for the AH-6M "Little Bird" helicopter and/or was the purchaser or otherwise successor-in-interest to the designer, manufacturer, tester, seller, supplier and systems integrator for the AH-6M "Little Bird" helicopter and other commercially available helicopters that share the same or similar design.   The defendant is a product "seller" as that term is defined under the Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m(a).

17.     Defendant MD Helicopters, Inc. is a corporation organized and existing under the laws of the State of Arizona with its principal place of business in Mesa, Arizona and at all times material hereto was, among other things, the designer, manufacturer, tester, seller, supplier and systems integrator for the AH-6M "Little Bird" helicopter or was the purchaser of or otherwise successor-in-interest to the designer, manufacturer, tester, seller, supplier and systems integrator for the AH-6M "Little Bird" helicopter and other commercially available helicopters that share the same or similar design.  The defendant is a product "seller" as that term is defined under the Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m(a).

18.     Together and collectively, Defendant Boeing Company and Defendant MD Helicopters, Inc. are referred to herein as the "Helicopter Defendants."

## BACKGROUND

19.     The AH-6M "Little Bird" (referred to hereinafter as "Little Bird") is a helicopter designed, tested and supplied to the U.S. Army substantially based upon the design and testing of a pre-existing, commercially available civilian helicopter, certified by the Federal Aviation Administration (referred to hereinafter as "FAA") for civilian flight.

20.     The Helicopter Defendants were and are charged with supplying the Little Bird helicopter, its engine and other components for use in the aircraft that meet safety, performance, and reliability standards.

21.     The design and manufacture of the Little Bird helicopter were and are defective and unreasonably dangerous because the aircraft is neither capable of safe flight throughout the entire operating envelope for which it was supplied nor does it meet the required manufacturing and quality control standards.

22.     The design and manufacture of the Little Bird helicopter were and are defective and unreasonably dangerous because the aircraft is not crashworthy and, in the event of a

malfunction and impact with terrain, the aircraft did not and does not provide for survivability of the pilots and other occupants of the aircraft.

23.     The Little Bird helicopter and other commercially available aircraft are powered by the commercially available turbine engine known as a Model 250 engine, which was, among other things, and is designed, manufactured, tested, marketed, sold, and supplied by the Engine Defendants.

24.     Before it was utilized on the Little Bird helicopter, the Model 250 engine was widely available commercially, with over 30,000 engines delivered to customers by the Engine Defendants.

25.     The Engine Defendants were and are charged with supplying Model 250 engine, and component parts, that meet safety and reliability standards.

26.     The Engine Defendants' design and manufacture of the Model 250 engine were and are defective and unreasonably dangerous because the engine does not allow for pilot control, fuel delivery, or full rated power throughout the entire operating envelope for which it was certified and supplied.

27.     The Model 250 engine is unreliable as a result of a design that incorporates a single-channel FADEC that does not provide the pilot with sufficient engine power for safe flight in the event of a FADEC failure.

28.     A FADEC is a digital computer that controls fuel to a turbine engine.  The FADEC senses engine parameters and delivers fuel to the engine according to its programming. A FADEC failure then results in fuel delivery failure, which directly effects the engine power, control and performance.

29.     The Model 250 engine does not incorporate an adequate backup system to the single-channel, single point of failure FADEC, and the result of the single point of failure with inadequate backup is a loss of engine control that results in grave danger to the helicopter, its crew, and passengers.

30.     The Model 250 engine is unreliable as a result of the Engine Defendants' lack of a coherent quality assurance system and, worse, the Engine Defendants' outright rejection of quality control standards and their knowing supply of rejected parts to customers.

31.     The Engine Defendants terminated employees who documented their multiple quality assurance violations regarding the Model 250 engine installed on the Little Bird aircraft; a whistleblower lawsuit, styled U.S. ex rel. McArtor v. Rolls-Royce Corp., No. 1:08-cv-0133, is ongoing in the United States District Court for the Southern District of Indiana.

32.     The Model 250 engine that was and is installed in the Little Bird helicopter and other commercially available aircraft contains an EMC-35 FADEC, that was, among other things, and is designed, manufactured, tested, marketed, sold, and supplied by the FADEC Defendants that is supposed to provide the pilot with full engine control throughout the operating envelope of the engine and that is supposed to provide reliable and efficient engine operation.

33.     The FADEC Defendants were and are charged with supplying the EMC-35 FADEC, and its component parts, that meet the safety and reliability standards.

34.     The Defendants' design and manufacture of the EMC-35 FADEC were and are defective and unreasonably dangerous because, among other things, the FADEC has a single channel, a single point of failure, zero redundancy, poor reliability, and it does not allow the engine on which it is installed to produce full rated power throughout the entire operating envelope for which it was certified and supplied.

7

35.     The EMC-35 FADEC has experienced numerous problems, and has been upgraded and/or replaced in commercial aircraft; nonetheless, EMC-35 FADEC failures still occur with frightening frequency, placing military and civilian pilots, as well as helicopter passengers and people on the ground, in grave danger.

36.     The Defendants were aware of the flaws in the helicopter, its engine and its FADEC, yet they did nothing to warn the government and they did nothing to alert the pilots of the potential for catastrophic failure of these components.

37.     Defendants have concealed a high rate of defects in the helicopter, engine and FADEC and have knowingly continued to supply commercial and government customers with components that fail. Defendants knew that the consequence of these failures would be serious injury and death, including the death of Plaintiffs' decedent Steven Redd.

38.     In addition, the Defendants have failed in their duties to provide accurate and reliable troubleshooting information for the Little Bird aircraft and have also failed to provide adequate instructions and warnings for pilots who experience helicopter, engine, and/or FADEC failures.

39.     The Defendants have failed in their duties to the government, including the FAA and the U.S. Army, to ensure that the equipment that they design, manufacture, test, market, supply and sell is airworthy and capable of safe flight. Defendants, through manufacturing flaws and quality assurance failures, provided unreliable, unairworthy, and defectively manufactured helicopter, engine, fuel control, FADEC and other components which resulted in the crash that is the subject of this lawsuit.

## THE HELICOPTER CRASH

40.     Plaintiffs' decedent Steven B. Redd ("Steven Redd") was a Warrant Officer in the U.S Army and an accomplished helicopter pilot.

8

41.     Steven Redd was a decorated combat veteran with 12 deployments in support of Operation Iraqi Freedom and Operation Enduring Freedom.

42.     On August 8, 2011 the AH-6M "Little Bird" aircraft, tail number 06-25380 (referred to hereinafter as the "Subject Aircraft") was manned by Plaintiffs' decedent Steven B. Redd and Captain David Hortman.

43.     On August 8, 2011, Steven Redd was the pilot-in-command of the Subject Aircraft and David Hortman was the copilot; however, either pilot is capable of controlling the aircraft at any time and both Steven Redd and David Hortman were qualified to be a pilot-in-command.

44.     On August 8, 2011, the Subject Aircraft was scheduled to be part of a daytime training exercise in Visual Meteorological Conditions ("VMC") at Fort Benning, Georgia and to provide live aerial fire support of Army ground forces.

45.     Before the training exercise began, the Subject Aircraft performed a range sweep meant to ensure that the training area contained suitable training reference points and a live fire support impact area that was clear of personnel and vehicles.

46.     On the afternoon of August 8, 2010 the daytime weather was clear, hot and humid.  The Subject Aircraft performed two overflights of the training area at about 100 feet above the highest obstacle.

47.     After the second overflight of the training area, the pilots of the Subject Aircraft announced to the flight lead that they needed to land immediately.  The flight lead observed the Subject Aircraft at 100 feet above the ground and descending in a slight right-hand turn at about 80 knots.  The pilot(s) of the Subject Aircraft called flight lead again and announced in a panicked voice "I'm going in."  The Subject Aircraft was observed hitting the tops of tall trees

9

on the Southwest side of the training area under powered flight and not in an autorotation. The aircraft impacted the terrain at about 30 degrees nose-down.

48.     Steven Redd was found outside the aircraft, conscious and responsive to commands whereupon he was treated by Army medics and civilian ambulance and air ambulance medical personnel. He was evacuated from the scene of the crash and later died.

49.     The post-crash investigation revealed that the FADEC on the Subject Aircraft failed to a low fixed fuel setting, which affected the RPM of the Subject Aircraft's rotors and caused altitude loss.

50.     The post-crash investigation also revealed that the pilots of the Subject Aircraft performed the prescribed emergency procedures but that the manual backup to the FADEC was neither effective in controlling the Subject Aircraft nor its badly malfunctioning engine.

51.     As a result of the crash and the death of Plaintiffs' decedent, Decedent's next of kin have been, and in the future will be, deprived of decedent's support, services, love, comfort, care, society, companionship, affection, advice, counsel, moral support and protection.

52.     As a direct and proximate result of the conduct of defendants, and each of them, Decedent's surviving heirs have incurred funeral, burial and related expenses.

### Count I – Connecticut Product Liability Act (as to the Helicopter Defendants)

53.     Plaintiffs incorporate by reference paragraphs 1-52 above.

54.     The Defendants are liable to the Plaintiffs under the the Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m, et seq. under theories of strict liability, negligence, and warranty in that, among other things:

        a.      The AH-6M Little Bird helicopter was defective;

        b.      The AH-6M Little Bird helicopter was unreasonably dangerous;

c.      The AH-6M Little Bird helicopter was in the same condition on the day it failed as it was at the time of delivery;

d.      The failure of the AH-6M Little Bird helicopter was the result of manufacturing and/or design defects;

e.      This crash was the result of the failure of the AH-6M Little Bird helicopter to provide the pilots with a reliable engine and means for aircraft propulsion, power, and control;

f.      The death of Plaintiffs' decedent Steven Redd was the result of the AH-6M Little Bird helicopter not being designed or manufactured to be crashworthy or otherwise allowing for pilot survivability in the event of a crash.

55.     The defects in the AH-6M Little Bird helicopter include but are not limited to the following:

a.      Dangerous and defective design because the AH-6M Little Bird helicopter was prone to failure at a rate that is not consistent with safe flight;

b.      Dangerous and defective manufacture because the AH-6M Little Bird helicopter was prone to failure at a rate that is not consistent with safe flight;

c.      Dangerous and defective systems integration because the known failure modes of the AH-6M Little Bird helicopter were not accounted for and the crew was not protected from a single-point of failure in the helicopter, engine, and FADEC components;

     d.     Dangerous and defective systems integration that did not allow for an adequate backup system for the engine and FADEC single point of failure with no redundancy;

     e.     Dangerous and defective design, manufacture, and/or systems integration that incorporated a dangerous and defective manual backup system to the single FADEC that did not allow for adequate pilot control of the engine;

     f.     Dangerous and defective systems integration that did not allow the pilots to command adequate fuel supply to the engine for safe flight throughout the entire operating envelope of the AH-6M Little Bird helicopter;

     g.     Dangerous and defective systems integration of pilot restraint, pilot seating, and other safety systems that did not allow for pilot survivability in the event of a crash;

     h.     Dangerous and defective instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the helicopter, engine and FADEC components, which were known only to Defendants;

     i.     Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures for AH-6M Little Bird helicopters, engines, FADECs and their components;

     j.     Dangerous and defective warnings about engine and FADEC failures;

     k.     Dangerous and defective warnings about crash survivability.

56.     The Defendants were negligent and that negligence was the direct and/or proximate cause of the death of Steven Redd.

57.    The negligence of the Defendants consisted of the following, among other things:

a.    Failing to properly design the AH-6M Little Bird helicopter;

b.    Failing to properly manufacture the AH-6M Little Bird helicopter;

c.    Failing to properly integrate the systems of the AH-6M Little Bird helicopter because the known failure modes of the AH-6M Little Bird helicopter were not accounted for and the crew was not protected from a single-point of failure in the helicopter, engine and FADEC components;

d.    Failing to properly integrate the systems of the AH-6M Little Bird helicopter because they did not allow for an adequate backup system for the engine and FADEC single point of failure with no redundancy;

e.    Failing to properly design, manufacture and/or integrate the systems of the AM-6M Little Bird helicopter by incorporating an adequate backup system to the single FADEC that would allow for adequate pilot control of engine;

f.    Failing to properly integrate the systems of the AH-6M Little Bird helicopter because it did not allow the pilots to command adequate fuel supply to the engine for safe flight throughout the entire operating envelope of the helicopter;

g.    Failing to properly integrate the systems of the AH-6M Little Bird helicopter because the aircraft's pilot restraint, pilot seating, and other safety systems did not allow for pilot survivability in the event of a crash;

h.    Failing to provide proper instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the

13

helicopter, engine and FADEC components, which were known only to the Defendants;

i.  Failing to provide proper operating instructions, operating limitations, operating procedures and emergency procedures for AH-6M Little Bird helicopters, engines, FADECs and their components;

j.  Failing to provide proper warnings about engine and FADEC failures;

k.  Failing to provide proper warnings about the FADEC's manual backup system;

l.  Failing to provide proper warnings about crash survivability;

m.  Failing to redesign the AH-6M Little Bird helicopter, its engine, FADEC and components to correct defects that were known to Defendants, or should have been known to them;

n.  Failing to take all reasonable steps to provide the pilots with redundancy given the known history of engine Model 250 and EMC-35 FADEC defects;

o.  Failing to properly and adequately perform their contracts in good faith to protect those who pilot and fly the AH-6M Little Bird helicopter.

58.  There existed at the time of this crash, certain warranties of fitness for a particular purpose and merchantability that were implied from the sale of the AH-6M Little Bird helicopter to the United States by these Defendants regardless of any writing to eliminate them.

59.  The warranty of fitness for a particular purpose was breached by the Defendants for the reasons set forth in above because the AH-6M Little Bird helicopter was completely and wholly inadequate for the purpose intended, safe flight.

60.     The warranty of merchantability was breached by the Defendants because the AH-6M Little Bird helicopter was not of fair or average quality as compared with other helicopters made by competitors nor was it of the same quality as others manufactured by these Defendants in that this one failed to function as required.

61.     The warranty of merchantability was breached by these Defendants because the AH-6M Little Bird helicopter was not of fair or average quality as compared with other helicopters.

62.     As a direct and proximate result of the defects, negligence, and breaches of warranty by the Defendants, Steven Redd lost his life.

63.     WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

### Count II – Breach of Contract (as to Helicopter Defendants)

64.     Plaintiffs incorporate by reference paragraphs 1-63 above.

65.     The United States Government entered into a performance-only contract with the Defendants for the supply of a multi-purpose helicopter.

66.     The purpose of that contract was to provide the United States Army with a multi-purpose helicopter that would conduct missions in support of ground troops in combat and in training.

67.     The requirements of the contract were performance-only requirements that did not specify the precise manner of construction.

68.     The design, manufacture, testing and systems integration of the helicopter was the responsibility of the Defendants pursuant to the performance-only requirements of the contract.

69.     The entire objective of the contract was to provide an airworthy helicopter for the benefit of the pilots and the ground troops, in this instance Steven Redd.

15

70.     It was the objective, purpose and specific intention of the parties that the beneficiaries of the contract are the pilots and the specific objective that the pilots be equipped with an aircraft that would provide, under all anticipatable flight conditions, including combat and training, sufficient thrust, power, airworthiness and crashworthiness so that the aircraft and the pilots would survive both the flight and the fight.

71.     The Defendants breached their contract for the beneficiary, Steven Redd, by failing to provide an aircraft that met the performance-only requirements of the contract.

72.     The Defendants breached their contract for the creditor beneficiary, Steven Redd, by failing to meet their obligations as set forth in Count I.

73.     As a direct and proximate cause of Defendants' breach of contract, decedent, Steven Redd lost his life.

74.     WHEREFORE, Plaintiffs and decedent suffered injury and damages as set forth herein.

### Count III – Punitive Damages (C.G.S. § 52-240b, (as to Helicopter Defendants)

75.     Plaintiffs incorporate by reference paragraphs 1 – 74 above.

76.     The Defendants knew, beginning at least in 2007, that the AH-6M Little Bird helicopter was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

77.     The Defendants knew, by virtue of multiple previous failures of the AH-6M Little Bird helicopter, its engine, FADEC, and other components, that the helicopter was unreasonably dangerous and prone to failure yet the Defendants knowingly concealed this information from the government and specifically from the Army.

78.     The Defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that these systems and components

16

were unreasonably dangerous, prone to failure, prone to single-point failure, and required adequate redundancy yet the Defendants knowingly concealed this information from the government and specifically from the Army.

79.     The Defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that the manual backup system for the FADEC was unreasonably dangerous because it did not allow for adequate pilot control of the engine.

80.     In numerous meetings, conversations and communications with the government, and specifically with the Army, the Defendants repeatedly failed to disclose the true nature of the defects of the AH-6M Little Bird helicopter, its engine, FADEC, and components and, instead, falsely represented that the helicopter, its engine, FADEC, and components would provide sufficient power, thrust, engine control, and aircraft control throughout the helicopter's entire operating envelope and that the probability of failure would be remote or highly remote.

81.     The Defendants charged the government millions of dollars for a helicopter that could not and did not provide the pilots with the basic needs of safe flight.

82.     The Defendants acted in reckless disregard of the safety of product users, by knowingly supplying an unreasonably dangerous and defective AH-6M Little Bird helicopter, thereby violating Conn. Gen. Stat. § 52-240b.

83.     The reckless disregard of the Defendants included, but is not limited to, falsely:

        a.     Representing that the AH-6M Little Bird helicopter would meet the performance requirements of the contract when these Defendants knew the helicopter did not meet those requirements;

17

b.    Representing that the AH-6M Little Bird helicopter met the reliability requirements of the contract when these Defendants knew the helicopter did not meet those requirements;

c.    Representing that the AH-6M Little Bird helicopter met the system integration requirements of the contract when these Defendants knew the helicopter did not meet those requirements;

d.    Representing that the Model 250 engine and the EMC-35 FADEC would work with the helicopter to provide safe flight when these Defendants knew that these components would not work to provide for the helicopter's safe flight;

e.    Representing that they had fixed or cured any defects in the AH-6M Little Bird helicopter when these Defendants knew they had not;

f.    Representing that they had performed adequate testing and evaluation of the AH-6M Little Bird helicopter, its engine, and FADEC when these Defendants knew they had not.

g.    Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these Defendants knew they had not;

h.    Representing that they had provided appropriate warnings when these Defendants knew they had not;

i.    Representing that they had provided appropriate operating instructions, operating limitations, operating procedures, and emergency procedures when these Defendants knew they had not;

18

j.   Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these Defendants knew they had not;

k.   Representing that they had properly manufactured the helicopter and all of its operating systems;

l.   Representing that the manual backup system to the single FADEC would allow for adequate control of the engine when these Defendants knew it would not.

84.   As a direct and proximate of the reckless disregard of the Defendants, Plaintiffs have a claim for punitive damages.

85.   WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

### Count IV – Fraud (as to Helicopter Defendants)

86.   Plaintiffs incorporate by reference paragraphs 1 – 85 above.

87.   The Defendants knew, beginning at least in 2007, that the AH-6M Little Bird helicopter was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

88.   The Defendants knew, by virtue of multiple previous failures of the AH-6M Little Bird helicopter, its engine, FADEC, and other components, that the helicopter was unreasonably dangerous and prone to failure yet the Defendants knowingly concealed this information from the government and specifically from the Army.

89.   The Defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that these systems and components were unreasonably dangerous, prone to failure, prone to single-point failure, and required

19

adequate redundancy yet the Defendants knowingly concealed this information from the government and specifically from the Army.

90.     The Defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that the manual backup system for the FADEC was unreasonably dangerous because it did not allow for adequate pilot control of the engine.

91.     In numerous meetings, conversations and communications with the government, and specifically with the Army, the Defendants repeatedly failed to disclose the true nature of the defects of the AH-6M Little Bird helicopter, its engine, FADEC, and components and, instead, falsely represented that the helicopter, its engine, FADEC, and components would provide sufficient power, thrust, engine control, and aircraft control throughout the helicopter's entire operating envelope and that the probability of failure would be remote or highly remote.

92.     The Defendants charged the government millions of dollars for a helicopter that could not and did not provide the pilots with the basic needs of safe flight.

93.     The Defendants committed actual fraud on the United States Army, and therefore its employee Steven Redd, by knowingly supplying an unreasonably dangerous and defective AH-6M Little Bird helicopter.

94.     The fraud of the Defendants included, but is not limited to, falsely:

      a.      Representing that the AH-6M Little Bird helicopter would meet the performance requirements of the contract when these Defendants knew the helicopter did not meet those requirements;

b.      Representing that the AH-6M Little Bird helicopter met the reliability requirements of the contract when these Defendants knew the helicopter did not meet those requirements;

c.      Representing that the AH-6M Little Bird helicopter met the system integration requirements of the contract when these Defendants knew the helicopter did not meet those requirements;

d.      Representing that the Model 250 engine and the EMC-35 FADEC would work with the helicopter to provide safe flight when these Defendants knew that these components would not work to provide for the helicopter's safe flight;

e.      Representing that they had fixed or cured any defects in the AH-6M Little Bird helicopter when these Defendants knew they had not;

f.      Representing that they had performed adequate testing and evaluation of the AH-6M Little Bird helicopter, its engine, and FADEC when these Defendants knew they had not.

g.      Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these Defendants knew they had not;

h.      Representing that they had provided appropriate warnings when these Defendants knew they had not;

i.      Representing that they had provided appropriate operating instructions, operating limitations, operating procedures, and emergency procedures when these Defendants knew they had not;

21

j.     Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these Defendants knew they had not;

k.     Representing that they had properly manufactured the helicopter and all of its operating systems;

l.     Representing that the manual backup system to the single FADEC would allow for adequate control of the engine when these Defendants knew it would not.

95.     As a direct and proximate result of the fraud and deceit of the Defendants, Plaintiffs have a claim for punitive damages.

96.     WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

### Count V – Connecticut Product Liability Act (as to the Engine Defendants)

97.     Plaintiffs incorporate by reference paragraphs 1-96 above.

98.     The Defendants are liable to the Plaintiffs under the Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m, et seq. under theories of strict liability, negligence, and warranty in that:

a.     The Model 250 engine was defective;

b.     The Model 250 engine was unreasonably dangerous;

c.     The Model 250 engine was in the same condition the day that it failed as it was at the time of delivery;

d.     The failure of the Model 250 engine was the result of manufacturing and/or design defects;

22

e.      This crash was the result of the failure of the Model 250 engine to provide the pilots with a reliable engine and means for aircraft propulsion and power.

99.     The defects in the Model 250 engine include but are not limited to the following:

a.      Dangerous and defective design because the Model 250 engine was prone to failure at a rate that is not consistent with safe flight;

b.      Dangerous and defective manufacture because the Model 250 engine was prone to failure at a rate that is not consistent with safe flight;

c.      Dangerous and defective systems integration because the known failure modes of the Model 250 engine were not accounted for and the crew was not protected from a single-point of failure in the engine, its FADEC, and its components;

d.      Dangerous and defective systems integration that did not allow for an adequate backup system for the engine and FADEC single point of failure with no redundancy;

e.      Dangerous and defective design, manufacture, and/or systems integration that incorporated a dangerous and defective manual backup system to the single FADEC that was not able to allow for adequate pilot control of the engine;

f.      Dangerous and defective systems integration that did not allow the pilots to command adequate fuel supply to the engine for safe flight throughout the entire operating envelope of the Model 250 engine;

g.      Dangerous and defective instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the Model 250 engine, its FADEC, and its components, which were known only to Defendants;

h.      Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures for Model 250 engine, its FADEC and its components;

i.      Dangerous and defective warnings about engine and FADEC failures.

100.    The Defendants were negligent and that negligence was the direct and/or proximate cause of the death of Steven Redd.

101.    The negligence of the Defendants consisted of the following:

a.      Failing to properly design the Model 250 engine;

b.      Failing to properly manufacture the Model 250 engine;

c.      Failing to properly implement a quality control system that ensured that engines with manufacturing defects were not supplied to the customer;

d.      Failing to properly follow established government and industry standards for quality control systems;

e.      Failing to properly design, manufacture and/or integrate the manual backup to the single FADEC that would allow for adequate pilot control of the engine;

f.      Failing to properly remove defective components from the engines that it supplied;

g.      Failing to properly integrate the systems of the Model 250 engine because the known failure modes of the Model 250 engine were not accounted for and the crew was not protected from a single-point of failure in the engine, its FADEC, and its components;

h.      Failing to properly integrate the systems of the Model 250 engine because they did not allow for an appropriate backup system for the engine and FADEC single point of failure with no redundancy;

i.      Failing to properly integrate the systems of the Model 250 engine because the engine did not allow the pilots to command an adequate fuel supply for safe flight throughout the entire operating envelope of the engine;

j.      Failing to provide proper instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the Model 250 engine, its FADEC and its components, which were known only to Defendants;

k.      Failing to provide proper operating instructions, operating limitations, operating procedures and emergency procedures for the Model 250 engine, its FADECs and its components;

l.      Failing to provide proper warnings about engine and FADEC failures;

m.      Failing to redesign the Model 250 engine, its FADEC and its components to correct defects that were known to Defendants, or should have been known to them;

n.      Failing to take all reasonable steps to provide the pilots with redundancy given the known history of engine Model 250 and EMC-35 FADEC defects;

o.      Failing to properly and adequately perform their contracts in good faith to protect those who pilot and fly in aircraft with the Model 250 engine.

102.    There existed at the time of this crash, certain warranties of fitness for a particular purpose and merchantability that were implied from the sale of the Model 250 engine to the United States by these Defendants regardless of any writing to eliminate them.

103.    The warranty of fitness for a particular purpose was breached by the Defendants for the reasons set forth above because the Model 250 engine was completely and wholly inadequate for the purpose intended, safe flight.

104.    The warranty of merchantability was breached by the Defendants because the Model 250 engine was not of fair or average quality of other engines made by competitors nor is it of the same quality as others manufactured by these Defendants in that this one failed to function as required.

105.    The warranty of merchantability was breached by these Defendants because the Model 250 engine was not of fair or average quality of other engines.

106.    As a direct and proximate result of the defects, negligence and breaches of warranty by the Defendants, Steven Redd lost his life.

107.    WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

## Count VI – Breach of Contract (as to Engine Defendants)

108.    Plaintiffs incorporate by reference paragraphs 1-107 above.

109.    The United States Government entered into a performance-only contract with the Defendants for the supply of a turbine engine to power the AH-6M Little Bird helicopter.

26

110.   The purpose of that contract was to provide the United States Army with an engine that would provide power throughout the entire operating envelope of the aircraft.

111.   The requirements of the contract were performance-only requirements that did not specify the precise manner of construction.

112.   The design, manufacture, testing and systems integration of the engine was the responsibility of the Defendants pursuant to the performance-only requirements of the contract.

113.   The entire objective of the contract was to provide an airworthy engine for the benefit of the pilots, in this instance Steven Redd.

114.   It was the objective, purpose and specific intention of the parties that the beneficiary of the contract was the pilots and the specific objective that they be equipped with an engine that would provide, under all anticipatable flight conditions and in combat and in training, sufficient power and airworthiness so that the aircraft and the pilots would survive the flight and the fight.

115.   The Defendants breached their contract for the creditor beneficiary, Steven Redd, by failing to provide an engine that met the performance-only requirements of the contract.

116.   The Defendants breached their contract for the creditor beneficiary, Steven Redd, by failing to meet their obligations as set forth in Counts V.

117.   WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

### Count VII – Punitive Damages (C.G.S. § 52-240b) (as to Engine Defendants)

118.   Plaintiffs incorporate by reference paragraphs 1-117 above.

119.   The Defendants knew, beginning at least in 2007, that the Model 250 engine was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

120.    The Defendants knew, by virtue of multiple previous failures of the Model 250 engine, its FADEC and other components, that the engine was unreasonably dangerous and prone to failure yet the Defendants knowingly concealed this information from the government and specifically from the Army.

121.    The Defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that these systems and components were unreasonably dangerous, prone to failure, prone to single-point failure, and required adequate redundancy yet the Defendants knowingly concealed this information from the government and specifically from the Army.

122.    The Defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that the manual backup system for the FADEC was unreasonably dangerous because it did not allow for adequate pilot control of the engine.

123.    In numerous meetings, conversations and communications with the government, and specifically with the Army, the Defendants repeatedly failed to disclose the true nature of the flaws of the Model 250 engine, its FADEC and components and, instead, falsely represented that the engine, its FADEC and components would provide sufficient power, thrust, engine control and aircraft control throughout the helicopter's entire operating envelope and that the probability of failure would be remote or highly remote.

124.    The Defendants charged the government millions of dollars for an engine that could not and did not provide the pilots with the basic needs of safe flight.

125.    In numerous meetings, conversations, and communications with their own employees, these Defendants knew that the Model 250 engine, its FADEC and its components

28

did not pass quality control standards, yet they knowingly concealed this information from the government and instead falsely represented that the Model 250 engine, its FADEC and its components passed quality control standards.

126.    In numerous meetings, conversations and communications with their own employees, these Defendants knew that the Model 250 engine, its FADEC and its components did not meet government manufacturing specifications, yet they knowingly concealed this information from the government and instead falsely represented that that the Model 250 engine, its FADEC and its components met government manufacturing specifications.

127.    In numerous meetings, conversations and communications with their own employees, these Defendants knew that the Model 250 engine, its FADEC and its components did not meet government performance specifications, yet they knowingly concealed this information from the government and instead falsely represented that that the Model 250 engine, its FADEC and its components met government performance specifications.

128.    The Defendants acted in reckless disregard of the safety of product users, and by knowingly supplying an unreasonably dangerous and defective AH-6M Little Bird helicopter, thereby violating Conn. Gen. Stat. § 52-240b,

129.    The reckless disregard of the Defendants included but is not limited to, among other things, the following, by falsely:

  a.    Representing that the Model 250 engine would meet the performance requirements of the contract when these Defendants knew the engine did not meet those requirements;

b.     Representing that the Model 250 engine met the reliability requirements of the contract when these Defendants knew the engine did not meet those requirements;

c.     Representing that the Model 250 engine met the system integration requirements of the contract when these Defendants knew the engine did not meet those requirements;

d.     Representing that the Model 250 engine and the EMC-35 FADEC would work to provide safe flight throughout the anticipated operating envelope when these Defendants knew that these components would not work to provide for the safe flight;

e.     Representing that they had fixed or cured any defects in the Model 250 engine when these Defendants knew they had not;

f.     Representing that they had performed adequate testing and evaluation of the Model 250 engine and its FADEC when these Defendants knew they had not;

g.     Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these Defendants knew they had not;

h.     Representing that they had provided appropriate warnings when these Defendants knew they had not;

i.     Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these Defendants knew they had not;

30

j.      Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the flight and the fight when these Defendants knew they had not;

k.     Representing that they had in place an adequate and acceptable quality control system for the engine, its FADEC and its components when these Defendants knew they had not;

l.      Representing that the engines, FADECs, and components that were supplied to the government met quality control standards when these Defendants knew they did not;

m.    Representing that the engines, FADECs, and components that were supplied to the government were free from manufacturing defects when these Defendants knew they were not;

n.     Representing that the engines, FADECs and components that were supplied to the government conformed to government specifications when these Defendants knew they did not;

o.     Representing that the manual backup system to the single FADEC would allow for adequate control of the engine when these Defendants knew it would not.

130.    As a direct and proximate result of the the reckless disregard and deceit of the Defendants, Plaintiffs have a claim for punitive damages.

131.    WHEREFORE, Plaintiffs suffered injury and damages as set forth herein

### **Count VIII – Fraud (as to Engine Defendants)**

132.    Plaintiffs incorporate by reference paragraphs 1-131 above.

133.   The Defendants knew, beginning at least in 2007, that the Model 250 engine was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

134.   The Defendants knew, by virtue of multiple previous failures of the Model 250 engine, its FADEC and other components, that the engine was unreasonably dangerous and prone to failure yet the Defendants knowingly concealed this information from the government and specifically from the Army.

135.   The Defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that these systems and components were unreasonably dangerous, prone to failure, prone to single-point failure, and required adequate redundancy yet the Defendants knowingly concealed this information from the government and specifically from the Army.

136.   The Defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that the manual backup system for the FADEC was unreasonably dangerous because it did not allow for adequate pilot control of the engine.

137.   In numerous meetings, conversations and communications with the government, and specifically with the Army, the Defendants repeatedly failed to disclose the true nature of the flaws of the Model 250 engine, its FADEC and components and, instead, falsely represented that the engine, its FADEC and components would provide sufficient power, thrust, engine control and aircraft control throughout the helicopter's entire operating envelope and that the probability of failure would be remote or highly remote.

138.    The Defendants charged the government millions of dollars for an engine that could not and did not provide the pilots with the basic needs of safe flight.

139.    In numerous meetings, conversations, and communications with their own employees, these Defendants knew that the Model 250 engine, its FADEC and its components did not pass quality control standards, yet they knowingly concealed this information from the government and instead falsely represented that the Model 250 engine, its FADEC and its components passed quality control standards.

140.    In numerous meetings, conversations and communications with their own employees, these Defendants knew that the Model 250 engine, its FADEC and its components did not meet government manufacturing specifications, yet they knowingly concealed this information from the government and instead falsely represented that that the Model 250 engine, its FADEC and its components met government manufacturing specifications.

141.    In numerous meetings, conversations and communications with their own employees, these Defendants knew that the Model 250 engine, its FADEC and its components did not meet government performance specifications, yet they knowingly concealed this information from the government and instead falsely represented that that the Model 250 engine, its FADEC and its components met government performance specifications.

142.    The Defendants committed actual fraud on the United States Army and therefore its employee Steven Redd by knowingly supplying an unreasonably dangerous and defective Model 250 engine.

143.    The fraud of the Defendants included but is not limited to, among other things, the following, by falsely:

a.     Representing that the Model 250 engine would meet the performance requirements of the contract when these Defendants knew the engine did not meet those requirements;

b.     Representing that the Model 250 engine met the reliability requirements of the contract when these Defendants knew the engine did not meet those requirements;

c.     Representing that the Model 250 engine met the system integration requirements of the contract when these Defendants knew the engine did not meet those requirements;

d.     Representing that the Model 250 engine and the EMC-35 FADEC would work to provide safe flight throughout the anticipated operating envelope when these Defendants knew that these components would not work to provide for the safe flight;

e.     Representing that they had fixed or cured any defects in the Model 250 engine when these Defendants knew they had not;

f.     Representing that they had performed adequate testing and evaluation of the Model 250 engine and its FADEC when these Defendants knew they had not;

g.     Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these Defendants knew they had not;

h.     Representing that they had provided appropriate warnings when these Defendants knew they had not;

34

i.      Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these Defendants knew they had not;

j.      Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the flight and the fight when these Defendants knew they had not;

k.      Representing that they had in place an adequate and acceptable quality control system for the engine, its FADEC and its components when these Defendants knew they had not;

l.      Representing that the engines, FADECs, and components that were supplied to the government met quality control standards when these Defendants knew they did not;

m.      Representing that the engines, FADECs, and components that were supplied to the government were free from manufacturing defects when these Defendants knew they were not;

n.      Representing that the engines, FADECs and components that were supplied to the government conformed to government specifications when these Defendants knew they did not;

o.      Representing that the manual backup system to the single FADEC would allow for adequate control of the engine when these Defendants knew it would not.

144.    As a direct and proximate result of the fraud and deceit of the Defendants, Plaintiffs have a claim for punitive damages.

145.     WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

**Count IX –  Connecticut Product Liability Act (as to the FADEC Defendants)**

146.     Plaintiffs incorporate by reference paragraphs 1-145 above.

147.     The Defendants are liable to the Plaintiffs under the y Connecticut Product Liability Act, Conn. Gen. Stat. §52-272m, et seq. under theories of strict liability, negligence, and warranty in that:

a.     The EMC-35 FADEC was defective;

b.     The EMC-35 FADEC was unreasonably dangerous;

c.     The EMC-35 FADEC was in the same condition the day it failed as it was at the time of delivery;

d.     The failure of the EMC-35 FADEC was the result of manufacturing and/or design defects;

e.     This crash was the result of the failure of the EMC-35 FADEC to provide the engine and therefore the pilots with a reliable means for fuel delivery and therefore aircraft propulsion and power.

148.     The defects in the EMC-35 FADEC include but are not limited to the following:

a.     Dangerous and defective design because the EMC-35 FADEC was prone to failure at a rate that is not consistent with safe flight;

b.     Dangerous and defective manufacture because the EMC-35 FADEC was prone to failure at a rate that is not consistent with safe flight;

c.     Dangerous and defective systems integration because the known failure modes of the EMC-35 FADEC were not accounted for and the crew was not protected from a single-point of failure in the FADEC and its components;

d.      Dangerous and defective systems integration that did not allow for an adequate backup system for the FADEC single channel, single point of failure with no redundancy;

e.      Dangerous and defective systems integration that did not allow the pilots to command adequate fuel supply from the FADEC for safe flight throughout the entire operating envelope of the FADEC and the engine;

f.      Dangerous and defective instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the EMC-35 FADEC and its components, which were known only to Defendants;

g.      Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures for EMC-35 FADEC and its components;

h.      Dangerous and defective warnings about FADEC failures.

149.    The Defendants were negligent and that negligence was the direct and/or proximate cause of the death of Steven Redd.

150.    The negligence of the Defendants consisted of the following, among other things:

a.      Failing to properly design the EMC-35 FADEC;

b.      Failing to properly manufacture the EMC-35 FADEC;

c.      Failing to properly integrate the systems of the EMC-35 FADEC because the known failure modes of the EMC-35 FADEC were not accounted for and the crew was not protected from a single-channel, single point of failure in the FADEC and its components;

37

d.      Failing to properly integrate the systems of the EMC-35 FADEC because they did not allow for an appropriate backup system for FADEC single-channel, single point of failure with no redundancy;

e.      Failing to properly integrate the systems of the EMC-35 FADEC because the FADEC did not allow the pilots to command an adequate fuel supply to the engine for safe flight throughout the entire operating envelope of the engine;

f.      Failing to provide proper instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the EMC-35 FADEC and its components, which were known only to Defendants;

g.      Failing to provide proper operating instructions, operating limitations, operating procedures and emergency procedures for the EMC-35 FADEC and its components;

h.      Failing to provide proper warnings about FADEC failures;

i.      Failing to redesign the EMC-35 FADEC and its components to correct defects that were known to Defendants, or should have been known to them;

j.      Failing to take all reasonable steps to provide the pilots with redundancy given the known history of EMC-35 FADEC defects;

k.      Failing to properly and adequately perform their contracts in good faith the protect those who pilot and fly in aircraft with the EMC-35 FADEC.

151.    There existed at the time of this crash, certain warranties of fitness for a particular purpose and merchantability that were implied from the sale of the EMC-35 FADEC to the United States by these Defendants regardless of any writing to eliminate them.

152.    The warranty of fitness for a particular purpose was breached by the Defendants for the reasons set forth in Counts VIII because the EMC-35 FADEC was completely and wholly inadequate for the purpose intended, safe flight.

153.    The warranty of merchantability was breached by the Defendants because the EMC-35 FADEC was not of fair or average quality of other engines made by competitors nor as it of the same quality as others manufactured by these Defendants in that this one failed to function as required.

154.    The warranty of merchantability was breached by these Defendants because the EMC-35 FADEC was not of fair or average quality of other FADECs or engine controls.

155.    As a direct and proximate result of the defects, negligence and breaches of warranty by the Defendants Steven Redd lost his life.

156.    WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

### Count X – Breach of Contract (as to FADEC Defendants)

157.    Plaintiffs incorporate by reference paragraphs 1-156 above.

158.    The United States Government entered into a performance-only contract with the Defendants for the supply of an EMC-35 FADEC that allowed for fuel metering and engine control to Model 250 engine.

159.    The purpose of that contract was to provide the United States Army with a FADEC that would control the turbine engine so that it could provide power throughout the entire operating envelope of the aircraft.

160.    The requirements of the contract were performance-only requirements that did not specify the precise manner of construction.

161.    The design, manufacture, testing and systems integration of the FADEC was the responsibility of the Defendants pursuant to the performance-only requirements of the contract.

162.    The entire objective of the contract was to provide an airworthy FADEC for use in the turbine engine for the benefit of the pilots, in this instance Steven Redd.

163.    It was the objective, purpose and specific intention of the contracting parties that the beneficiary of the contract was the pilots and the specific objective that they be equipped with a FADEC that would meter the fuel and control the engine that would provide, under all anticipatable flight conditions and in combat and in training, sufficient power and airworthiness so that the aircraft and the pilots would survive the flight and the fight.

164.    The Defendants breached their contract for the creditor beneficiary, Steven Redd, by failing to provide a FADEC that met the performance-only requirements of the contract.

165.    The Defendants breached their contract for the creditor beneficiary, Steven Redd, by failing to meet their obligations as set forth in Counts VIII.

166.    As a direct and proximate result the Plaintiffs suffered the injuries described herein.

167.    WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

**Count XI – Punitive Damages (C.G.S. § 52-240b)(as to FADEC Defendants)**

168.    Plaintiffs incorporate by reference paragraphs 1-167 above.

169.    The Defendants knew, beginning at least in 2007, that the EMC-35 FADEC was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

40

170.    The Defendants knew, by virtue of multiple previous failures of the EMC-35 FADEC and its components, that the FADEC was unreasonably dangerous and prone to failure yet the Defendants knowingly concealed this information from the government and specifically from the Army.

171.    The Defendants knew, by virtue of multiple previous failures of EMC-35 FADECs installed on other aircraft, that this system and its components were unreasonably dangerous, prone to failure, prone to single-point failure, and required adequate redundancy yet the Defendants knowingly concealed this information from the government and specifically from the Army.

172.    In numerous meetings, conversations and communications with the government, and specifically with the Army, the Defendants repeatedly failed to disclose the true nature of the flaws of EMC-35 FADEC and its components and, instead, falsely represented that the FADEC and its components would provide sufficient fuel metering and engine control throughout the engine's entire operating envelope and that the probability of failure would be remote or highly remote.

173.    The Defendants charged the government millions of dollars for FADECs that could not and did not provide the pilots with the basic needs of safe flight.

174.    The Defendants acted in reckless disregard of the safety of product users, and by knowingly supplying an unreasonably dangerous and defective AH-6M Little Bird helicopter, thereby violating Conn. Gen. Stat. § 52-240b,

175.    The reckless disregard of the Defendants included, but is not limited to, the following by falsely:

a.      Representing that the EMC-35 FADEC would meet the performance requirements of the contract when these Defendants knew the engine did not meet those requirements;

b.      Representing that the EMC-35 FADEC met the reliability requirements of the contract when these Defendants knew the engine did not meet those requirements;

c.      Representing that the EMC-35 FADEC met the system integration requirements of the contract when these Defendants knew the engine did not meet those requirements;

d.      Representing that the EMC-35 FADEC would work to provide safe flight throughout the anticipated operating envelope when these Defendants knew that these components would not work to provide for the safe flight;

e.      Representing that they had fixed or cured any defects in the EMC-35 FADEC when these Defendants knew they had not;

f.      Representing that they had performed adequate testing and evaluation of the EMC-35 FADEC when these Defendants knew they had not;

g.      Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these Defendants knew they had not;

h.      Representing that they had provided appropriate warnings when these Defendants knew they had not;

i.    Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these Defendants knew they had not;

j.    Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these Defendants knew they had not;

k.    Representing that they had in place an adequate and acceptable quality control system for the engine, its FADEC and its components when these Defendants knew they had not;

l.    Representing that they had properly manufactured the FADEC when they had not.

176.   As a direct and proximate result of the fraud and deceit of the Defendants, Plaintiffs sustained the damages herein alleged including a claim for punitive damages.

177.   WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

## Count XII – Fraud (as to FADEC Defendants)

178.   Plaintiffs incorporate by reference paragraphs 1-177 above.

179.   The Defendants knew, beginning at least in 2007, that the EMC-35 FADEC was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

180.   The Defendants knew, by virtue of multiple previous failures of the EMC-35 FADEC and its components, that the FADEC was unreasonably dangerous and prone to failure yet the Defendants knowingly concealed this information from the government and specifically from the Army.

181.    The Defendants knew, by virtue of multiple previous failures of EMC-35 FADECs installed on other aircraft, that this system and its components were unreasonably dangerous, prone to failure, prone to single-point failure, and required adequate redundancy yet the Defendants knowingly concealed this information from the government and specifically from the Army.

182.    In numerous meetings, conversations and communications with the government, and specifically with the Army, the Defendants repeatedly failed to disclose the true nature of the flaws of EMC-35 FADEC and its components and, instead, falsely represented that the FADEC and its components would provide sufficient fuel metering and engine control throughout the engine's entire operating envelope and that the probability of failure would be remote or highly remote.

183.    The Defendants charged the government millions of dollars for FADECs that could not and did not provide the pilots with the basic needs of safe flight.

184.    The Defendants committed actual fraud on the United States Army and therefore its employee Steven Redd by knowingly supplying an unreasonably dangerous and defective EMC-35 FADEC.

185.    The fraud of the Defendants included, but is not limited to, the following by falsely:

  a.    Representing that the EMC-35 FADEC would meet the performance requirements of the contract when these Defendants knew the engine did not meet those requirements;

b.      Representing that the EMC-35 FADEC met the reliability requirements of the contract when these Defendants knew the engine did not meet those requirements;

c.      Representing that the EMC-35 FADEC met the system integration requirements of the contract when these Defendants knew the engine did not meet those requirements;

d.      Representing that the EMC-35 FADEC would work to provide safe flight throughout the anticipated operating envelope when these Defendants knew that these components would not work to provide for the safe flight;

e.      Representing that they had fixed or cured any defects in the EMC-35 FADEC when these Defendants knew they had not;

f.      Representing that they had performed adequate testing and evaluation of the EMC-35 FADEC when these Defendants knew they had not;

g.      Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these Defendants knew they had not;

h.      Representing that they had provided appropriate warnings when these Defendants knew they had not;

i.      Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these Defendants knew they had not;

j.      Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these Defendants knew they had not;

k.      Representing that they had in place an adequate and acceptable quality control system for the engine, its FADEC and its components when these Defendants knew they had not;

l.      Representing that they had properly manufactured the FADEC when they had not.

186.    As a direct and proximate result of the fraud and deceit of the Defendants, Plaintiffs sustained the damages herein alleged including a claim for punitive damages.

187.    WHEREFORE, Plaintiffs suffered injury and damages as set forth herein.

### Count XIII – Loss of Consortium (Adalia Lee Redd v ALL Defendants)

188.    Plaintiff incorporates by reference paragraphs 1-187 above.

189.    Adalia Lee Redd was the wife of Steven Burton Redd.

190.    As a result of the injuries and death sustained to her husband, as alleged in this Complaint, the Plaintiff, Adalia Lee Redd, has lost the consortium, love, affection and support of her husband and she has suffered mental and emotional anguish.

### Count XIV – Loss of Consortium (Jazlyn Redd v ALL Defendants)

191.    Plaintiff incorporates by reference paragraphs 1-190 above.

192.    Jazlyn Redd was the daughter of Steven Burton Redd.

193.    As a result of the injuries and death sustained to her father, as alleged in this Complaint, the Plaintiff, Jazlyn Redd, has lost the consortium, love, affection and support of her father and she has suffered mental and emotional anguish.

### **Count XV – Loss of Consortium (Dezaray Redd v ALL Defendants)**

194.    Plaintiff incorporates by reference paragraphs 1-193 above.

195.     Dezaray Redd was the daughter of Steven Burton Redd.

196.    As a result of the injuries and death sustained to her father, as alleged in this Complaint, the Plaintiff, Dezaray Redd, has lost the consortium, love, affection and support of her father and she has suffered mental and emotional anguish.

### **Count XVI – Loss of Consortium (Tristyn Redd v ALL Defendants)**

197.    Plaintiff incorporates by reference paragraphs 1-196 above.

198.    Tristyn Redd was the son of Steven Burton Redd.

199.    As a result of the injuries and death sustained to his father, as alleged in this Complaint, the Plaintiff, Tristyn Redd, has lost the consortium, love, affection and support of his father and he has suffered mental and emotional anguish.

### **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For personal property damage according to proof;

4.    For costs of the decedent's funeral, burial, and related expenses according to proof;

5.    For pre-judgment and post-judgment interest as allowed by law;

6.    For exemplary/punitive damages according to proof;

7.    For pre-death pain and suffering according to proof;

8.    For costs of suit incurred herein; and

9.    For such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues and causes of action.

For Plaintiffs,

By  ___/s/   Jose M. Rojas, Esq._____
Jose Rojas, Federal Bar # CT22569
Rojas Law Firm, LLC
40 Russ Street
Hartford, CT  06106
(860) 860-232-3476
rojas@therojaslawfirm.com

Ronald L. M. Goldman
California State Bar #33422
Timothy A. Loranger
California State Bar #225422
Baum, Hedlund Aristei & Goldman, PC
12100 Wilshire Boulevard, Suite 950
Los Angeles, California 90025
(Pending Pro Hac Vice Admission)